**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**TONY HOWELL,**

Plaintiff,

v.

**FORMLABS OHIO, INC., et al.**

Defendants.

CASE NO. 3:25 CV 1345

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending before the Court is Defendants Formlabs Ohio, Inc. ("Formlabs"), Jason Fullmer, and Erin Kozina's Motion for Summary Judgment. (Doc. 18).[1] The Motion is fully briefed and decisional. *See* Docs. 27, 28. Also pending is Defendants' Motion for Hearing. (Doc. 31). For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment in part as to Plaintiff's FMLA claim, declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice; and denies Defendants' Motion for Hearing as moot.

## BACKGROUND

Plaintiff began employment with Formlabs in July 2019 as Vice President of Manufacturing. (Plaintiff Aff., Doc. 27-2, at 1). He received positive feedback about his

---

1. The Motion, filed on October 8, 2025, was originally captioned a Motion for Judgment on the Pleadings, or in the Alternative, Summary Judgment. (Doc. 18). At the October 15, 2025, Case Management Conference, the Court converted the Motion to one for summary judgment and ordered the parties to conduct targeted discovery (on the issue of when Formlabs made the termination decision). (Doc. 21, at 2). At that time, the Court set Plaintiff's opposition deadline for January 30, 2026 (three and-a-half months later) and Defendants' Reply deadline for February 20, 2026. *Id.*

performance and was promoted to Head of Ohio Material Operations in June 2024. *Id.*;[2] *see also id.* at 2 (stating he "received positive feedback and was unaware of any concerns with [his] performance" and never received any disciplinary or performance warnings or writeups).[3]

In September 2024, Jason Fullmer, Chief Operating Officer, conducted Plaintiff's mid-point review. (Fullmer Aff., Doc. 18-3, at 2). He attests he told Plaintiff that "while he executed reasonably well on the ideas given to him, he needed to engage in dynamic thinking to determine how to improve [the company] on his own." *Id.* He told Plaintiff the plant "was far behind where it needed to be in cost, quality and efficiency and that more dramatic changes were needed." *Id.*

In October 2024, Hicham Fadel started at Formlabs GMBH (a German subsidiary of Formlabs). *Id.* Fadel reported to Fullmer and became Plaintiff's direct manager. *Id.*

Internal Formlabs notes from October 28, 2024, about performance (cited by Plaintiff (Doc. 27, at 11)), state Plaintiff "has done a nice job of filling the shoes" of the employee he replaced, "made strides in changing the culture and execution of the team onsite," and is "much more collaborative" than the prior employee. (Doc. 27-1, at 18). In sections of the same note not cited by Plaintiff, they also state Plaintiff was "trying hard, making progress but still overwhelmed with the scope increase" and "struggling with" balancing demands, pace of change, and vision. *Id.* Plaintiff attests "[a]t no time during the period of April 2024 to my

---

2. Defendants refer to this role as "Plant Manager." *See*, *e.g.*, Doc. 18-1, at 9. Plaintiff testified that a "site lead" or "Plant Manager" was the same thing. (Plaintiff Depo., Doc. 30-2, at 9-10).

3. Defendants correctly point out that to the extent Plaintiff's January 29, 2026 Affidavit (Doc. 27-2) contradicts his deposition of the same date (Doc. 30-2), it is inadmissible to create an issue of fact. *See, e.g.*, *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907–08 (6th Cir. 2006) ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.")

release on January 20, 2025, was it communicated that [his] position was in jeopardy due to [his] performance." (Plaintiff Aff., Doc. 27-2, at 3).

During Plaintiff's deposition, he acknowledged that notes (from a document to which both he and Fullmer had access) from a November 20, 2024, meeting with Fullmer accurately reflected comments made by Fullmer during that meeting. (Plaintiff Depo., Doc. 30-2, at 34-35).[4] These notes stated:

- Tony feedback
  - A lot of changes needed
  - We are moving too slow
  - You need to increase your scope, influence and rate of change
  - [Fadel] is going to push you on more than I have due to more focus/bandwidth
  - You need to embrace the challenge understand why this is so important and evolve as a leader to help us get there.
  - Too many ankle biters
    - GP resin lead-times
    - Behind on production schedules
    - "Going to get caught up"
    - People don't want to work overtime
    - Recharge day decision and comms

(Doc. 29-9, at 2).

Fadel and Fullmer discussed Plaintiff's performance and agreed it was deficient. (Doc. 18-3, at 2) ("Fadel communicated to me that he observed the same deficiencies, that is, the pace of change was too slow and that a lot more change was needed.").[5] On November 26, 2024,

4. The Court references the internal deposition pagination rather than the ECF pagination.
5. Plaintiff objects to consideration of this statement as hearsay. (Doc. 27, at 11). But the Court agrees with Defendants (Doc. 28, at 17) these statements are admissible to show effect on the listener/state of mind. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) ("[a] statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay"). "Such a statement may be admitted to show why the listener acted as [he] did." *United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015). And "Federal Rule of Evidence 803(3) provides an exception to the bar against hearsay for '[a] statement of [a] declarant's then-existing state of mind (such as motive, intent, or plan).'" *Id.* (quoting Fed. R. Evid. 803(3)).

Fullmer and Fadel discussed further, and Fullmer "decided that [Plaintiff] would be terminated." *Id.* He decided to implement termination in January to give the company time to create a transition plan. *Id.* at 2-3; (Fullmer Supp. Aff., Doc. 29, at 1). During this same meeting, Fullmer directed Fadel to start preparing for a confidential search for a replacement (in coordination with Shannon Brown, Formlabs Inc.'s Head of Operational Excellence / Talent Acquisition Strategy) and instructed Fadel to start working on a job description for the position. (Fullmer Aff., Doc. 18-3, at 3).[6] Fullmer attests he took contemporaneous notes of this meeting, which he supplies; they read (on November 26, 2024 at 10:46 AM):

Nov. 26, 2024

- Tony needs to be replaced.
  - Confidential searching soon
  - Meeting with Shannon next week
  - Talk to Tony

(Doc. 29-4). The metadata of the file show Fullmer subsequently edited the same document with his notes on January 6, 2025 (set forth below). (Doc. 29-5, at 2). Thereafter, in addition to new notes, this same section of the notes read:

Nov. 26, 2024

- Tony needs to be replaced.
  - Confidential searching soon
  - Meeting with Shannon next week
  - Talk to Tony **in Jan**

(Doc. 29-5, at 2) (emphasis added).

6. Fullmer attaches a job description which he avers is "a true and accurate copy of the draft job description Fadel started on November 27, 2024, with metadata (version history) showing the date (November 27, 2024) he began drafting the same. (Doc. 18-3, at 3); *see also* Doc. 18-3, at 9. Plaintiff objects to consideration of this as "[i]t is unclear how Fullmer can attest to [it] or to the accompanying metadata since he is not indicated as having accessed the job description." (Doc. 27, at 12). The Court finds it unnecessary to resolve this dispute as consideration of this document is not necessary to resolution of the Motion.

On November 21, 2024, Plaintiff visited his primary care physician to address medical concerns. (Plaintiff Aff., Doc. 27-2, at 1).

Plaintiff avers generally that he "informed others of [his] absences for medical appointments and tests . . . at plant-wide meetings (which Jason Fullmer attended on occasion), to my direct supervisor, Dr. Hicham Fadel, in weekly operations meetings, and via email and Slack to Erin Kozina, Dave Johnson, and others." *Id.* At his deposition, however, he could "not recall a specific whiteboard meeting or weekly meeting" where he made such communication, and just that he generally said he "was going to be having some medical tests and procedures completed." (Plaintiff Depo., Doc. 30-2, at 43).[7] He further testified some individuals at those meetings asked questions but he could not recall any specific individual. *Id.* at 44. He said "[g]enerally speaking, the questions were like, what's going on, Tony?", and that he "did not answer with [his] medical condition." *Id.* at 44-45. At his deposition, Plaintiff also testified he "simply [did] not recall" whether Fullmer attended any specific weekly meeting. (Plaintiff Depo., Doc. 30-2, at 16); *see also id.* at 42. He testified Fadel attended some meetings between November 1, 2024 and January 20, 2025, but did not recall specifically which ones. *Id.* at 17.

Fullmer attests he "had no knowledge of any kind regarding Mr. Howell's health issue prior to November 26, 2024." (Fullmer Supp. Aff., Doc. 29, at 7).

In his Supplemental Affidavit, Fullmer also states "in conducting the search Plaintiff's counsel requested," he "also found two documents, which address (in part) [Plaintiff's] termination and a replacement Plant Manager." (Doc. 29, at 6). These are a December 14, 2024 document entitled "Spectra Improvement Plan" that refers to "Plant Manager Replacement" and

7. As noted above, to the extent Plaintiff's Affidavit contradicts his deposition, it is inadmissible to create an issue of fact. *Aerel, S.R.L.*, 448 F.3d at 907-08.

states, "[t]he current Plant Manager's release is scheduled for week 4 of 2025." (Doc. 29-2, at 7). Fullmer describes these as "Mr. Fadel's notes." (Doc. 29, at 6).[8]

The second document Fullmer references is his own notes from a December 17, 2024, meeting with Katherine Cole, a Formlabs Human Resources manager and Kozina's direct manager at the time. (Fullmer Aff., Doc. 29, at 7). These notes state:

> Katherine
> 1. How was offsite? Anyone step up with energizing plans/discussions/etc.?
> 2. Tony exit
>     a. January, ~3rd week
>     b. Engage Erin the week before?
>     c. Confidential search
>     d. In new year – Spectra visit – any plans to go or I will coordinate with Hicham.
>         i. Maybe last week of Jan, or March.

(Doc. 29-8).[9]

In December 2024, Plaintiff was invited to a Global Operations Team Leadership meeting in Boston for Fullmer's direct reports, even though he was not reporting to Fullmer at that time; he "viewed this as an indication that [he] was a valued part of the organization." (Plaintiff Aff., Doc. 27-2, at 3).

Plaintiff asserts he requested Family and Medical Leave Act ("FMLA") paperwork from Kozina "[i]n December of 2024." *Id.* at 1. At his deposition, he had no specific memory of when this occurred in December. (Plaintiff Depo., Doc. 30-2, at 18). He did not recall specifically what he said, but "[g]enerally speaking" said he "would like a copy of some FMLA forms." (Plaintiff Depo., Doc. 30-2, at 18-19). Kozina provided the requested forms, but Plaintiff never filled them

---

8. The Court again finds these notes properly considered on summary judgment as "[a] statement of [a] declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3)).
9. These statements are again admissible under Fed. R. Evid. 803(3).

out or returned them. (Plaintiff Aff., Doc. 27-2, at 1-2); (Doc. 27-2, at 5-8); (Plaintiff Depo., Doc. 30-2, at 19).

Plaintiff avers that on January 1, 2025, he informed Fadel over the Slack messaging platform he "was going to have some medical tests, medical procedures in the relatively near future and that [he] was going to need to take some time off." (Plaintiff Depo., Doc. 30-2, at 25). Plaintiff recalls Fadel "told [Plaintiff] to take as much time off as [he] needed for [his] appointments." (Plaintiff Aff., Doc. 27-2, at 2); *see also* Plaintiff Depo., Doc. 30-2, at 25 (same).

On January 6, 2025, Fullmer updated his notes in preparation for the following day. (Fullmer Supp. Aff., Doc. 29, at 4). These notes, which are contained in the same document as the earlier notes dated November 26, 2024, then read:

01/07/2025

- People
  - Tony Transition
    - Jason to Ohio???
    - Tony plan after comms
    - Hiring update
  - Your colleague?
    - Is he interested in moving?

*Id.* Fullmer avers the colleague referenced was a colleague of Fadel's in Germany who was being considered to replace Plaintiff. *Id.*

On January 7, 2025, Plaintiff sent an email to several Formlabs employees, including Kozina (but not including Fullmer or Fadel), stating a "[r]eminder" he was leaving at 3:00 p.m. for a doctor's appointment but would be back in the morning. (Doc. 30-2, at 30) (email).

Around 10:00 a.m. on January 20, 2025, Plaintiff told Fadel the specifics of his medical diagnosis. (Plaintiff Depo., Doc. 30-2, at 45). This was the first time he'd told anyone at Formlabs the specifics of his diagnosis, *id.*, as well as the date he orally first received that diagnosis from an oncologist, *id.* at 47. Plaintiff attests Fadel told him he "was doing too much

work" and "should be able to delegate more tasks to Human Resources and Accounting" and "reiterated to [him] to take as much time off as [he] needed for [his] appointments." (Plaintiff Aff., Doc. 27-2, at 2). Fadel also met later the same day with Plaintiff and his team "to review the slides for the monthly operating report later that week." *Id.*

On this same date, Fullmer traveled from Massachusetts to Ohio to inform Plaintiff in person of his termination. (Fullmer Aff., Doc. 18-3, at 3); (Plaintiff Depo., Doc. 30-2, at 45). He and Kozina informed Plaintiff of the decision. *Id.*; (Plaintiff Depo., Doc. 30-2, at 46). Plaintiff recalled that Fullmer told him "two specific reasons" for his termination: "change not happening quickly enough and no vision for the plant." (Plaintiff Depo., Doc. 30-2, at 46). Plaintiff asserts this termination meeting occurred at approximately 4:15 p.m. (Plaintiff Aff., Doc. 27-2, at 2).

Plaintiff brings suit, alleging interference in violation of the FMLA (Count I), retaliation in violation of the FMLA (Count II), retaliation in violation of Ohio Revised Code § 4112.02(I) (Count III), unlawful aiding, abetting, and inciting of discrimination in violation of Ohio Revised Code § 4112.02(J) (Count IV), and a violation of Section 34a, Article II of the Ohio Constitution (Count V). (Doc. 4, at 5-9). Counts I through III and V are brought against Formlabs and Count IV is brought against Kozina and Fullmer. *See id.*

## Standard of Review

Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains

sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257; *see also* Fed. R. Civ. P. 56(c)(1). Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials"). Ultimately, the party who bears the burden of proof must present a jury question as to each element of the claim. *See Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). A plaintiff cannot meet that burden by relying solely on "[c]onclusory assertions, supported only by [his or her] own opinions." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). Instead, the plaintiff must present probative evidence, based "on more than mere speculation, conjecture, or fantasy," to prevail. *Id.* at 601 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

## DISCUSSION

Defendants contend they are entitled to summary judgment because Fullmer made the decision to terminate Plaintiff on November 26, 2024, prior to any assertion by Plaintiff of his FMLA rights. *See, e.g.*, Doc. 18-1, at 7 ("the decision to terminate was made before any theoretical protected activity"). Plaintiff contends questions of fact preclude summary judgment.

*See* Doc. 27. For the reasons set forth below, the Court grants Defendants' Motion as to the FMLA claims, and dismisses Plaintiff's state law claims without prejudice.

<u>FMLA Claims</u>

Plaintiff asserts both an FMLA "interference" claim (under 29 U.S.C. § 2615(a)(1)) and an FMLA "retaliation" claim (under 29 U.S.C. § 2615(a)(2)). The FMLA prohibits an employer from "interfer[ing] with, restrain[ing] or deny[ing] the exercise of or the attempt to exercise, any right provided under this subchapter" and from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1)-(2). Absent direct evidence, the *McDonnell Douglas* burden-shifting framework applies to such claims. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2023). Under this familiar framework, the plaintiff bears the initial burden of establishing a *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1983). If plaintiff does so, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its actions. *Id.* at 802-03. If the defendant does so, the burden shifts back to Plaintiff to show the stated reason was pretext for unlawful discrimination. *Id.* at 804.

To establish a prima facie case of FMLA retaliation, Plaintiff must show:

> (1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)). Similarly, to establish a prima facie case of FMLA interference, Plaintiff must show that:

> (1) [he] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the

> employee gave the employer notice of [his] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [he] was entitled.

*Id.* (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

Defendants contend both claims necessarily fail because Formlabs, through Fullmer, decided to terminate Plaintiff's employment in November 2024 prior to Plaintiff informing anyone at Formlabs of a serious health condition or providing any notice of his intent to take FMLA leave/exercise his FMLA rights. Thus, they contend Plaintiff cannot establish the fifth element of an interference claim (Defendant denied him benefits to which he was entitled), or the fourth element of a retaliation claim (a causal connection between the protected activity and the termination).

"Core to both an FMLA-interference and retaliation claim is that the decisionmaker knew the employee requested, or was granted, FMLA leave before taking the adverse action." *Smyer v. Kroger Ltd. P'ship I*, 2022 WL 2757655, at *7 (S.D. Ohio), *aff'd*, 2024 WL 1007116 (6th Cir.). "A plaintiff could not prove their exercise of FMLA rights was a causal factor in the adverse employment action otherwise." *Id.*; *see Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008) ("[O]ne cannot retaliate against an employee for engaging in protected activity unless he knew the employee had done so."); *Grubb v. YSK Corp.*, 401 F. App'x 104, 113 (6th Cir. 2010) (holding that employee could not establish causal connection between use of FMLA leave and termination where decision to terminate preceded the employee's use of leave). "The key date in retaliation claims is the date of the decision to terminate the employee, not the date the decision is communicated to the employee." *Barnett v. Aultman Hosp.*, 2012 WL 5378738, at *10 (N.D. Ohio); *see also Grubb*, 401 F. App'x at 113 (decision made in July, but termination effectuated in October).

The dispute here boils down to whether Plaintiff has established a question of fact regarding whether, at the time the termination decision was made, the decisionmaker was aware of any attempt by Plaintiff to exercise his FMLA rights. Even more narrowly in the circumstances of this case, that dispute is whether there is a question of fact regarding whether the decision to terminate Plaintiff occurred – as Defendants assert it did – on November 26, 2024. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002) (a reasonable jury must be able to find—whether through direct or circumstantial evidence—that the decisionmakers "*knew or were aware*" the plaintiff was entitled to, and seeking, FMLA leave).

At the outset, the Court finds there is no dispute of fact regarding whether Fullmer (or anyone at Formlabs) knew of Plaintiff's health condition or any attempt to exercise rights under the FMLA prior to November 26, 2024. Fullmer avers he "had no knowledge of any kind regarding Mr. Howell's health issue prior to November 26, 2024." (Fullmer Supp. Aff., Doc. 29, at 7). And Plaintiff has pointed to no evidence to the contrary. At best, he has pointed only to a singular visit to his primary care physician prior to this date (November 21, 2024). *See* Plaintiff Aff., Doc. 27-2, at 1. Although "[t]here are no magic words an employee must use to assert their FMLA rights," *Smyer*, 2022 WL 2757655, at *7, an employee must give sufficient notice that he is requesting leave for an FMLA-qualifying condition by providing "enough information for the employer to reasonably conclude that an event described in the FMLA has occurred," *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (quoting *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)). Plaintiff has not done so here as to the period pre-dating November 26, 2024. *Compare, e.g.*, *Walton v. Ford Motor Co.*, 424 F.3d 481 (6th Cir. 2005) (informing employer the employee was injured, "sick," and had a scheduled doctor's appointment was insufficient notice under the FMLA); *with Reeder v. Cnty. of Wayne*, 694 F.

App'x 1001, 1006 (6th Cir. 2017) (providing notes from three healthcare providers that individual was unable to work in excess of eight hours per day was "sufficient notice that he was subject to an FMLA-qualifying condition that would excuse him from mandatory overtime work"). Plaintiff has not established a question of fact regarding whether Formlabs was on notice of his heath issue or attempt to invoke FMLA prior to November 26, 2024.

The Court therefore turns to the central factual dispute regarding timing of the termination decision. Defendants point to Fullmer's sworn testimony in his Affidavit and Supplemental Affidavit wherein Fullmer states he made the decision to terminate Plaintiff's employment on November 26, 2024, and decided the decision would be communicated to Plaintiff in January to allow time to create a transition plan. *See* Doc. 18-3, at 2-3; Doc. 29, at 1. Plaintiff, for his part, testified he had no knowledge of who made the decision to terminate his employment or when it was made. (Plaintiff Depo., Doc. 30-2, at 6).

Plaintiff initially argues Fullmer's Affidavit and testimony regarding his notes "is no different than Defendant Fullmer simply testifying that he made the termination decision before he knew about Mr. Howell's illness [a]nd that testimony would, and this self-serving purported note should, be subject to cross-examination and a credibility determination by a factfinder." (Doc. 27, at 10). But this is the nature of summary judgment. In evaluating a summary judgment motion, the Court does not "judge credibility or weigh conflicting evidence; instead, [it] believe[s] the evidence of the nonmoving party, and draw[s] 'all justifiable inferences' in his favor." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507 (6th Cir. 2021) (quoting *Anderson*, 477 U.S. at 255). And although Plaintiff contends the affidavits should be discounted as self-serving and prepared for litigation, "[a]ffidavits by their very nature tend to be self-serving." *Lannello v. Am. Gen. Life Ins. Co.*, 298 F. Supp. 3d 1133, 1138 (M.D. Tenn. 2018); *see also Barahona–*

*Cardona v. Holder*, 417 F. App'x 397, 399, n.1 (5th Cir. 2011) ("[I]ndeed, it would be odd for a party to submit an affidavit that was not self-serving in the sense that it provides support for [their] claim."). The Court must evaluate whether there is a factual dispute on the evidence before it.[10]

Plaintiff's focus on whether or not he could have anticipated his termination or his interpretation of comments or feedback does not speak to the relevant question or create a dispute of fact. *See, e.g.*, Doc. 27, at 14 ("Mr. Howell did not view the 'ankle-biter' description as an indication that his job was in jeopardy."); *id.* ("If true, which is not exactly as Mr. Howell recalls the meeting, this does not sound like termination is imminent."); *id.* at 15 ("At no time did Defendants communicate to Mr. Howell that his job was in jeopardy."). This is because "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). Moreover, the question raised by Defendants' motion speaks to causation (and factually when the termination decision was made), thus an attack on the underlying basis for the termination itself is not dispositive.

Plaintiff primarily contends the notes are ambiguous. But he does not present evidence to create a dispute of fact. That is, Plaintiff does not present any evidence upon which to base a reasonable inference contrary to Fullmer's testimony the termination decision occurred on

10. Plaintiff also contests the Affidavit is incorrect in that Fullmer's own title is misstated in both of his Affidavits, and his attestation that the FMLA policy attached to his Affidavit is "true and accurate" despite ending mid-sentence. (Doc. 27, at 13). The first assertion is perhaps a typographical error and regardless, a distinction without a difference ("Chief *Operations* Officer" vs. "Chief *Operating* Officer"), and the latter overlooks that the cited section of Fullmer's Affidavit states the attachment is "a true and accurate *excerpted* copy of Formlabs Inc.'s FMLA policy," not an assertion that the full policy is attached. (Doc. 18-3, at 3). The Court further observes, as Defendants point out, Plaintiff did not depose Fullmer, despite having the opportunity to do so. *See* Doc. 30-1 (email cancelling Fullmer's deposition).

November 26, 2026. Speculation and conjecture are not sufficient to overcome summary judgment. *See Lewis*, 355 F.3d at 533.

Viewing the record before the Court in the light most favorable to the Plaintiff, the Court finds Plaintiff has not pointed to evidence upon which a reasonable juror could find the termination decision was made after November 26, 2024. Combined with the fact there is no evidence to create a genuine issue of material fact regarding Fullmer's knowledge of any health condition or FMLA-related request at that time, Defendants are entitled to summary judgment on both of Plaintiff's FMLA claims.

State Law Claims

Plaintiff also brings state law claims for retaliation in violation of Ohio Revised Code § 4112.02(I) (Count III), unlawful aiding and abetting and inciting discrimination in violation of Ohio Revised Code § 4112.02(J) (Count IV), and violation of Section 34a, Article II of the Ohio Constitution (Count V). (Doc. 4, at 7-10).

District courts have discretion to refuse to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). The Court finds the balance of considerations weighs against the exercise of supplemental jurisdiction over Plaintiff's state law claims, particularly where one of the remaining claims involves a state constitutional provision. The claims are therefore dismissed without prejudice. *Bullock v. City of Covington*, 698 F. App'x 305, 307 (6th Cir. 2017)

("Normally, when a court declines to exercise supplemental jurisdiction, the court dismisses the [state] claims without prejudice.") (citations omitted).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 18) be, and the same hereby is, GRANTED as to Plaintiff's Federal claims and DENIED in part as to Plaintiff's state law claims, which are hereby DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Defendants' Motion for Oral Argument, be and the same hereby is, DENIED AS MOOT.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 21, 2026